## THE STATE AND STATE BANK, EX PARTE.

Where two complainants are claiming the same property—the one as purchaser at execution sale against the other—their interests are distinct and several, and they will not be allowed to sue together as such for the purpose of divesting the title of a third party, also execution purchaser of the same party.

The Bank of the State of Arkansas, upon a bill for injunction, will be required to verify the allegations of her bill, and give bond, like other suitors; and will not be allowed to prosecute her suit under cover of privileges which belong alone to the State, by uniting the State with her as complainant.

The State, averring in her bill in chancery, that she bid off property at execution sale against the State Bank, but neither alleging that she paid the amount bid, or offered to pay it, but only that she was able and willing to pay, and that the Bank had the means and was able to pay, does not show such title as will warrant the granting of an injunction to restrain a purchaser of the same property, at a subsequent execution sale, from asserting his legal remedies.

*Motion for a Mandamus to compel the Circuit Judge of Pulaski
County to grant an Injunction.*

S. H. HEMPSTEAD, for the motion.

PIKE & CUMMINS, contra.　·

Mr. Justice WALKER delivered the opinion of the Court.

This is an application for a mandamus to compel the judge of
the Circuit Court of Pulaski county to grant to the complainants
an injunction.

The judge, as appears from his endorsement upon the bill, re-
fused to grant the injunction, because the State had no interest
in the property described in the bill, and was not entitled to any
relief in the premises, and because the Bank, the other complain-
ant, who, in the opinion of the judge, had a right to equitable
relief, refused to swear to the bill, or to give security according
to law, in the sum of $6000, for the payment of damages in case
the injunction should be dissolved.

This, the complainants refused to do, upon the ground, that the
State is a party complainant; and, as such, is not bound to make
such affidavit, or to enter into bond as ordinary suitors are.　The
defendants deny that the State has any such interest in the mat-
ter in litigation, as to entitle her to an injunction, and that the
Bank, the other complainant, who, from the case made by the
bill, is alone entitled to relief, is only entitled to it upon the usual
terms imposed upon other suitors.

From the state of case presented by the bill, it is very evident
that there is not only no community of interest between the com-
plainants; but, on the contray, their respective claims are utterly
irreconcilable with each other.　Because, if the sale made by the
sheriff to the State is valid, then the Bank, the defendant in exe-
cution, has no interest in the property, and if, on the other hand,

the sales were fraudulent and void, the property still belongs to the Bank, and of course the State has no claim to it.

So far as the title of the State is concerned, every thing depends upon her sustaining the validity of her own title: because, unless she has title to it, it is a matter of no consequence with her, whether the sheriff and Newton perpetrated a fraud in the after-sale of the property or not. Having no rights under her purchase, of course none could be affected by the conduct of others. If the bid by the State, through her agent, became forfeited by a failure on her part to pay the sum bid to the sheriff, or for other cause, and the sheriff, in combination with others, perpetrated a fraud in the sale of the property, it must have been to the prejudice of the Bank, the defendant in execution, and for which she has a distinct cause of action; and so far from the State being made a party complainant, the Bank, under the circumstances, with far more propriety might have made the State a party defendant, denying the validity of her purchase as well as that of Newton's, with an appropriate prayer that both titles be canceled. There is no identity of interest between the State and the Bank in this property, no reference is made to the interest or liability of the State as a stockholder, or as responsible for the capital upon which the Bank went into operation; nor does she claim as one interested in the property of the Bank, which, since the liquidation act, has been held by the Bank, to be disposed of for the benefit of her creditors; but, on the contrary, the title set up in the bill is purely as purchaser, at judicial sale, of property which she alleges was sold as the property of the Bank. The complaint is, that a judgment was obtained against the Bank upon which execution issued, and was levied upon certain lots of land situate in the city of Little Rock, the property of the defendant in execution (the Bank,) which were exposed to sale according to law, and bid off by Euclid L. Johnson, as the agent of the State, for her, at the price of $205. That the sheriff knew that the State was able and willing to pay said bid, and that the Bank had the means to pay, and was well able to pay the same for the State,

34BB

and all that the sheriff had to do was to call upon the State or the Bank for the same, and that it would be paid; that the State has at all times been willing to pay said bid; that afterwards, at the request of Johnson (the agent), the sheriff executed and delivered a deed to the State, conveying the property with its appurtenances to her; and that the deed *recites* and *admits* the receipt of the purchase money, and by virture of all which the State becomes the lawful owner of the property, and so continues to be. These, together with the further allegation, that after the sale to Newton, the Bank, in behalf of the State, paid the balance of the debt due the plaintiff in execution, to Mr. Watkins, the attorney for plaintiff, and that whether paid or not, she has tendered the money to the sheriff, and is yet willing to pay the same; may be considered the grounds upon which the State rests her claim to equitable relief — grounds which, as we have said, are not only wholly independent of, but are also adverse to, those of the Bank.     Where co-plaintiffs have interests in the subject of the suit, but such interests are distinct and several, they will not be allowed to sue together as such, nor in case one of the parties plaintiff has no interest in the subject matter in issue, can they be joined.     This rule is fully recognized and settled by authority. 1 *Danl. Ch. Pl. & Pr.* 350 ; *Story's Equity Pl.* 544 ; *Boyd vs. Hoyt,* 5 *Paige* 65.

And if not permitted to join in ordinary cases, where they have distinct rights, with much more reason would they be precluded from the right to assert privileges as suitors, which alone extend to one of them.

But, in the case before us, the parties do not stand in so favorable a position as co-plaintiffs do, who have distinct interests in the same subject matter, because the State, in this instance, fails to show any right whatever in the property, according to her own showing, because she neither paid the purchase money, nor did she offer to pay it, until after the day of sale, at which the property was bid off to her; and, when such is the case, the sheriff may treat the bid as forfeited, and proceed under the statute to

re-sell the property. The allegation that the sheriff knew that the State and the Bank had money, and were ready and willing to pay the bid, when applied to, is no sufficient excuse for not paying or offering to pay, within reasonable hours, on the day of sale. A mere willingness or ability to pay, is not sufficient. Willingness must be evidenced by payment, or an offer to pay. The law knows no distinction between bidders at a cash sale; they are required to pay the money bid, or hold themselves ready, and offer to pay at the place of sale, if required. No valid title passed to the purchaser, even by deed, unless the purchase money was paid. Until this is done, the sheriff has no right to make the deed; he cannot charge himself with the amount bid, and make the deed, because this would be to substitute himself as debtor to the creditor. This, the policy of the law forbids, as was expressly held in *The State vs. Lawson, sheriff*, 14 *Ark. R.* 121. And so rigidly is this law enforced, that even where the sheriff had received from the purchaser the larger part of the money bid, and credited him for the balance, the deed was set aside. *Dickerson vs. Gilliland*, 1 *Cow.* 498.

There is no averment that the purchase money was paid, or offered to be paid, on the day that the property was bid off by the State. The averment, that "the deed *recites* and *admits*" payment, is clearly not an averment that the money was in fact paid, but only that it was so recited in the deed; and, from the guarded language, in which it is expressed : the deed *recites* and *admits*, &c., the averment of a tender after that time, negatives the idea that payment was in fact made. This being the case, it is evident that the State, according to the case made in the bill, acquired no title to the property as purchaser, and as she sets up no other title or claim to the property, the Bank, whose claim is of a very different nature, can derive no aid, from the mere fact that the State is named as party complainant in the suit, nor will she be allowed to prosecute her suit under cover of privileges, which alone belong to the State as a suitor in the assertion of her own rights. That the Bank may be unable to give the security

required, is a misfortune common to all poor suitors. It is not contended that she is not as much bound to comply with the terms imposed by the statute, as any other suitor, and if unable to do so, like all others, she must abide the consequences.

The application must be denied.

Mr. Chief Justice WATKINS not sitting in this case.